## TERESZKO v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, First Department. June 10, 1904.)

1. RAILROAD—INJURIES TO PERSON ON TRACK—EVIDENCE—QUESTION FOR JURY.
   In an action against a railroad for injuries sustained by one run over by one of defendant's trains, *held*, that it was a question for the jury whether the accident occurred at a highway crossing, as claimed by plaintiff.

2. SAME—EVIDENCE—SUFFICIENCY.
   In an action against a railroad for injuries sustained, evidence *held* insufficient to sustain a finding that the accident occurred at a highway crossing, as claimed by plaintiff.

   O'Brien, J., dissenting.

Appeal from Trial Term, New York County.

Action by John Tereszko against the New York Central & Hudson River Railroad Company. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before HATCH, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Robert A. Kutchbock, for appellant.
Paul Jones, for respondent.

HATCH, J. This action was brought to recover damages for personal injuries alleged to have been received through the negligence of the defendant. The accident occurred at Winburne Station, Clearfield county, Pa. The tracks of the defendant at this place run in an easterly and westerly direction. The northerly track is used for the west-bound, and the southerly track for the east-bound, traffic. The railroad station is north of the tracks. On the south side of the track, and almost directly opposite the station, is Boyce's Hotel, which is 117.5 feet from the southernmost rail. Between the hotel and the railroad station is a private plank walk maintained by Boyce, the hotel keeper. This plank walk runs straight to the depot, and bridges the ditch on the south side of the track. West of the station, and 185 feet west of this private walk, is a highway, which crosses the railroad, running practically north and south. Immediately west of the highway crossing is a cut, the walls of which are 4 feet high. One hundred feet west of that point the banks of the cut are 7 feet high. Two hundred feet west the bank is 11 feet in height, and 300 feet west the bank is 14 feet in height. The railroad runs through this cut on quite a sharp curve. These conditions are practically undisputed. Two trains, going in opposite directions, met and passed at this station on the night in question. The plaintiff had resided at Winburne Station about five months prior to the 19th day of January, 1901, the date of the accident. About 25 minutes after 5 o'clock on that day he went to the depot of the defendant with two companions, John and George Zurio. The latter purchased tickets for the party to Hawk Run, a station about six miles west of Winburne. After purchasing the tickets, plaintiff and his two companions went

to the hotel across the tracks. After they had been there some minutes, they saw the train coming from the east, and thereupon left the hotel to go to the station. This was the train that plaintiff and his companions intended to take. It ran in to the station, and remained there to await the arrival of the other train. When the plaintiff left the hotel, this train was just coming to a stop at the station. Plaintiff and his two companions testified that they walked out of the hotel, turned, and walked to the public road, which they traversed to the track at the highway crossing. When the plaintiff got within about two feet of the first track at the highway crossing, he and his companions stopped, looked in both directions, and listened for the approach of a train, but saw and heard none approaching from either direction. He then advanced upon the track, and just as he stepped on to the first rail of the track he was struck by the defendant's eastbound train, running at a high rate of speed, without giving any warning of its approach, and he received injuries which subsequently resulted in the amputation of his leg. Plaintiff and his witnesses also testified that at the time he stepped upon the track the smoke and steam from the engine attached to the train standing at the station floated out and obscured their vision. The plaintiff and one of his witnesses assigned as a reason why they did not pass over the private plank walk that they were afraid of falling off the bridge which ran across the ditch. The other witness testified that they did not walk down the plank walk because the west-bound train was standing upon the track in front of the station, and they could not get to the station by going that way. The engineer and fireman and two other witnesses who were employed upon this train testified that the train was running slowly over the crossing at the highway; that no accident occurred at that point, and that they saw no persons there; that as the engine reached the sidewalk leading to the hotel, three men were seen running, with their heads down, across the private way towards the train. The engineer testified that immediately on discovering their proximity to the engine he gave a short succession of blasts of the whistle, which is the ordinary alarm signal; that he had given the highway crossing signal of two long and two short blasts, and was ringing the bell as he went over the crossing. The other witnesses upon the train corroborated the engineer in respect of the signals which were given. Five witnesses testified, some of them that they saw the plaintiff and his two companions coming across the private way with their heads down, going towards the standing train, and that they paid no attention to the train that was then approaching. Some of these witnesses saw the men struck. Others were there immediately after, and described the situation, the positions of the men, and where they were lying. All of these witnesses for the defendant testified either to seeing the men struck at this private crossing, or to such a condition of facts immediately following the accident as tended strongly to establish the point where it occurred.

There are certain physical facts in this case which are undisputed, and which, of themselves, strongly tend to establish that the version given by the plaintiff and his witnesses as to the place and circumstances where the accident occurred does not constitute a true recital

of the facts. The distance from the hotel to the station over the private way was approximately 130 feet. Plaintiff and his companions were intending to take the train which was running into the station at the time when they left the hotel. This was a passenger train, and could be boarded from either side. It was only required to wait at the station to take on passengers and await the coming of the eastbound train. The expedition which attends the arrival and departure of trains would undoubtedly stimulate the plaintiff to an endeavor to reach and board the train as quickly as possible. If the statements of the plaintiff and witnesses be accepted, although the train was at the station, they turned and walked to the highway, a distance of 185 feet east of the depot, intending to make the crossing, and return the same distance to the train. This would require them to walk, in order to reach the place where they could board the train, nearly or quite 400 feet. Boyce, the hotel keeper, testified that for a portion of the way from the hotel to the highway it was plowed up, thus presenting an uneven surface over which the plaintiff was required to travel; and while the plaintiff and his witnesses testified that there was a road there, they did not contradict Boyce's statement. It is therefore highly improbable that under the circumstances the plaintiff and his witnesses would have taken this way in order to catch a train at the station, when they could have walked to it over the private way by traversing about 130 feet. In addition to this, there is no dispute as to where the plaintiff and one of his companions, who was also hit, were lying after the accident; and that point was east of the private crosswalk.

If the plaintiff had been struck at the highway crossing, he would necessarily have been thrown or dragged about 200 feet from the point of impact. It goes without saying that, if he had been struck with force sufficient to throw him this distance, the portion of his body which was struck would inevitably have been crushed. And yet his only injury was the severance of his leg just above the ankle. If he had been dragged from the highway crossing to where his body was found, as there was snow upon the ground, there would have been, in all human probability, some evidences of such fact. There was no physical evidence of any accident happening at the highway. At the private road crossing there was abundance of evidence showing that an accident had happened at that point from the physical conditions which were found to exist thereafter. When the action was first brought, the pleader evidently thought that the accident occurred at the private crossing, as he averred such to be the fact in the complaint. The necessities of the trial moved him to amend the complaint at the close of his proof by averring that the accident happened at the highway crossing. If the accident happened at the private way, there was nothing upon which the negligence of the defendant could be predicated, while the evidence was abundant upon which to predicate plaintiff's contributory negligence.

The court was doubtless required, upon the testimony appearing in the case, to submit the question of fact to the jury for their determination. But in view of the undisputed facts, the physical conditions, the circumstances surrounding the accident, the improbability

of the stories of the plaintiff and his witnesses, and the large preponderance in number of witnesses on the part of the defendant giving oral testimony, some of whom saw and witnessed the accident, lead us to the conclusion that the verdict which was rendered was against the clear weight of the evidence. For that reason, the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except O'BRIEN, J., who dissents.